UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

HILLARY B.,

                Plaintiff,

        v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

**DECISION AND ORDER**

1:21-CV-00489 EAW

## INTRODUCTION

Represented by counsel, plaintiff Hillary B. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' cross motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (Dkt. 14; Dkt. 20) and Plaintiff's reply (Dkt. 23). For the reasons discussed below, the Commissioner's motion (Dkt. 20) is granted and Plaintiff's motion (Dkt. 14) is denied.

## **BACKGROUND**

Plaintiff protectively filed her application for DIB on February 19, 2014.  (Dkt. 9 at

165, 1111).[1]  In her application, Plaintiff alleged disability beginning November 12, 2014.

(*Id.* at 166, 1111).  Plaintiff's application was initially denied on July 9, 2014.  (*Id.* at 176,

1111).  At Plaintiff's request, a hearing was held before administrative law judge ("ALJ")

Melissa Lin Jones on October 4, 2016, and continued on January 24, 2017.  (*Id.* at 36-63,

120-60).  On February 22, 2017, the ALJ issued an unfavorable decision.  (*Id.* at 16-35).

Plaintiff requested Appeals Council review; her request was denied on August 28, 2017,

making the ALJ's determination the Commissioner's final decision.  (*Id.* at 9-16).  Plaintiff

sought judicial review and on April 11, 2019, this Court entered a Decision and Order

remanding the matter to the Commissioner for further administrative proceedings.  (*Id.* at

1259-73).

On May 24, 2019, the Appeals Council issued an order remanding the matter to the

ALJ, and consolidating a subsequent DIB application filed by Plaintiff on June 12, 2018.

(*Id.* at 1276-78).  The matter was reassigned to ALJ Bryce Baird, and a hearing was held

on October 8, 2020.  (*Id.* at 1140-1209).  On December 16, 2020, the ALJ issued an

unfavorable decision.  (*Id.* at 1108-39).  This action followed.

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

## LEGAL STANDARD

### I.      District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

### II.     Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in

substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id.* § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id.* § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id.* § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id.* § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id.* § 404.1520(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and

work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

**I.   The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on June 30, 2018. (Dkt. 9 at 1114). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity from February 12, 2014, the alleged onset date, through June 30, 2018, the date last insured. (*Id.*).

At step two, the ALJ found that, through the date last insured, Plaintiff suffered from the severe impairments of: "posttraumatic stress disorder ('PTSD'); depressive disorder; later onset ulnar nerve compression of the left hand; [and] stenosis of the cervical spine." (*Id.*). The ALJ also found that Plaintiff suffered from the non-severe impairments of: borderline personality disorder; alcohol abuse disorder; marijuana abuse disorder; obesity; acute ischemia; anemia; vitamin deficiency; osteoarthritis of the ankle, knees, right wrist, and left foot; reflux; Barrett's esophagus; multiple acute infections; right thigh abscess; right carpal tunnel syndrome; history of asthma; kidney stones; adnexal cyst; and pelvic cyst. (*Id.* at 1114-15).

At step three, the ALJ found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 22-23). In particular, the ALJ considered the requirements of

Listings 1.02, 1.04, 11.14, 12.04, 12.06, and 12.15 in reaching his conclusion. (*Id*. at 1115-18).

Before proceeding to step four, the ALJ determined that, through the date last insured, Plaintiff retained the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c), with the following additional limitations:

> [Plaintiff] can lift and carry up [to] 50 pounds on occasion and up to 25 pounds frequently. . . .  [S]he has no limitations for sitting, stand[ing], or walking.  She can frequently handle and finger objects with the left (non-dominant) hand.  She is limited to simple routine tasks that can be learned after a short demonstration or within 30 days.  This would be work that would not require more than simple work-related decisions or travel to unfamiliar places.  This would work in which she could have up to occasional interaction with co-workers and no interaction with the public.  This would be work that would not involve teamwork such as on a production line.  This would be work that would require doing the same tasks every date with little variations in location, hours, or tasks.  This would be work that would be subject to no more than occasional supervision.

(*Id*. at 1118).  At step four, the ALJ found that, through the date last insured, Plaintiff was unable to perform any past relevant work.  (*Id*. at 1127).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform through the date last insured, including the representative occupations of kitchen helper, hand launderer, and hospital food worker.  (*Id*. at 1128).  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act through the date last insured.  (*Id*. at 1129).

II.     **The Commissioner's Determination is Supported by Substantial Evidence and Free from Reversible Error**

Plaintiff asks the Court to reverse the Commissioner's decision, arguing that: (1) the ALJ's findings at step three are inconsistent with his conclusions regarding Plaintiff's RFC; and (2) the ALJ failed to appropriately assess the opinions of treating licensed clinical social workers ("LCSW") Monica Jensen and Renee Grable and treating physician's assistant ("PA") Deborah Zizzi.  (Dkt. 14-1).   The Court is not persuaded by these arguments, for the reasons discussed below.

A.     **Internal Consistency of the ALJ's Decision**

Plaintiff's first argument is that the ALJ's decision is internally inconsistent, because he concluded at step three that Plaintiff had only a moderate limitation in interacting with others, but then limited Plaintiff to occasional supervision, occasional interaction with co-workers, and no interaction with the public in his RFC finding.[2] Plaintiff cites to *Shawn B. v. Comm'r of Soc. Sec.*, No. 1:20-CV-00528 EAW, 2021 WL 3884226 (W.D.N.Y. Aug. 31, 2021), a case in which this Court held that the ALJ had failed to appropriately reconcile his step three conclusion that the plaintiff had a moderate limitation in interacting with others with an RFC finding limiting the plaintiff to "only incidental contact with the general public and no more than occasional contact with co-

---

[2]     Plaintiff also argues that the ALJ should have found that she had a marked limitation in interacting with others.  (Dkt. 14-1 at 38-39).  However, Plaintiff's argument on this point is nothing more than a disagreement over how the ALJ weighed the various evidence of record.  As Plaintiff concedes (*see id.* at 38), medical expert Dr. Billings Fuess testified at the hearing before ALJ Baird that Plaintiff had only a moderate limitation in this area (*see* Dkt. 9 at 1150-52).  As discussed in connection with Plaintiff's second argument, the Court finds no error in the ALJ's decision to credit Dr. Fuess's opinion over the other opinions of record.

workers and supervisors." *Id*. at *4.  However, this case is distinguishable from *Shawn B.*, because the ALJ in that case offered no explanation for the apparent discrepancy.  *See id*. at *5 (explaining that "where an ALJ finds 'more severe limitations in the RFC than listed in his Step 3 finding **without explanation**," that "inconsistency calls into question the ALJ's Step 3 and RFC determinations, and leaves the Court unable to discern the ALJ's reasoning or reconcile his inconsistent findings.'" (emphasis added, alterations omitted, and quoting *Jay v. Comm'r of Soc. Sec.*, No. 17-CV-59S, 2018 WL 3688315, at *4 (W.D.N.Y. Aug. 3, 2018)).

In a subsequent decision, *Lynneesa M. v. Comm'r of Soc. Sec.*, No. 1:20-CV-00971 EAW, 2021 WL 4437184 (W.D.N.Y. Sept. 28, 2021), this Court found no reversible error where the ALJ "found at step three that Plaintiff had only a moderate limitation in her ability to interact with others, but then concluded in the RFC finding that Plaintiff could tolerate only occasional superficial interaction with supervisors and coworkers, and occasional to no interaction with the public." *Id*. at *5.  The Court determined that there was no "unexplained inconsistency between the ALJ's step three finding and her RFC analysis," because the ALJ had identified the reasons why she included such significant limitations in the RFC notwithstanding her step three finding of only a moderate limitation.

Here, like in *Lynneesa M.*, the ALJ provided a meaningful explanation for his conclusions.  In particular, the ALJ explained that Dr. Fuess had opined that notwithstanding Plaintiff's generally moderate limitations in interacting with others, her PTSD could present challenges in dealing with the public or other unfamiliar people in the workplace, due to the unpredictable nature of such encounters.  (*See* Dkt. 9 at 1119, 1154-

55).   This explanation provides a reasonable basis for any facial inconsistency between the step three finding and the RFC analysis.

Plaintiff also makes a cursory argument that the ALJ "erred in failing to evaluate the claim pursuant to listing 12.08[.]"  (Dkt. 14-1 at 36).  However, Listing 12.08 applies the same so-called "paragraph B criteria" as Listings 12.04, 12.06, and 12.15.  *See Bonilla Mojica v. Berryhill*, 397 F. Supp. 3d 513, 531 (S.D.N.Y. 2019) (discussing Listings 12.04, 12.06, 12.08, and 12.15, and the paragraph B criteria that apply to all of these listings). Accordingly, the ALJ's conclusion that Plaintiff's impairments did not meet or equal the paragraph B criteria for Listings 12.04, 12.06, and 12.15 (*see* Dkt. 9 at 1115-17) would apply equally to a consideration of Listing 12.08, and any error in this regard was harmless.

### B.    Evaluation of Opinion Evidence

Plaintiff's second and final argument is that the ALJ did not properly evaluate the opinions of LCSW Jensen, LCSW Grable, and PA Zizzi.  Pursuant to the regulations applicable to Plaintiff's claim:

> the ALJ must consider various factors in deciding how much weight to give to any medical opinion in the record, regardless of its source, including: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the . . . physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Pike v. Colvin*, No. 14-CV-159-JTC, 2015 WL 1280484, at *5 (W.D.N.Y. Mar. 20, 2015) (quotation and alterations omitted).  "An ALJ does not have to explicitly walk through these factors," so long as the Court can conclude that he or she "applied the substance" of the regulations and appropriately set forth the rationale for the weight given to the opinions.

*Hall v. Colvin*, 37 F. Supp. 3d 614, 625 (W.D.N.Y. 2014) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).   Neither a physician's assistant nor a social worker is considered an "acceptable medical source" under these regulations, and therefore their opinions are not entitled to any particular weight.   *See Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) ("[N]urse practitioners and physicians' assistants are defined as 'other sources' whose opinions may be considered with respect to the severity of the claimant's impairment and ability to work, but need not be assigned controlling weight."); *Feliciano o/b/o D.F. v. Comm'r of Soc. Sec.*, No. 1:18-CV-00502 EAW, 2020 WL 1815754, at *3 (W.D.N.Y. Apr. 10, 2020) ("As a licensed mental health counselor, Ms. Horan is not an acceptable medical source under the regulations.  Rather, Ms. Horan is an 'other source,' and therefore her opinion is not entitled to controlling weight.").

Here, the ALJ appropriately explained the reasons he gave little weight to the opinions of LCSWs Jensen and Grable and PA Rizzi.  In particular, he explained that the assessments had been "simply copied across time with no amendments or thoughtful changes," and that they were inconsistent with Plaintiff's mental status findings, her self-reported activities of daily living, and the opinions of Dr. Fuess, consultative examiner Dr. Janine Ippolito, and state agency reviewing psychologist Dr. Joel Straussner.  (Dkt. 9 at 1125).

Plaintiff argues that there is no evidence that the opinions at issue were "thoughtlessly copied across time."  (Dkt. 14-1 at 42 (quotation omitted)).   However, as the ALJ thoroughly explained in his opinion, LCSW Jensen first issued the opinion at issue in November of 2015.  (Dkt. 9 at 1125).  PA Zizzi joined in the statement in October of

2016 by simply signing her name to LCSW Jensen's opinion and writing the word "unchanged," without any additions or discussion of any changes in Plaintiff's health over the prior 11 months.  (*Id.* at 1023).  Then, in August of 2020, LCSW Grable signed her name to the exact same report, again merely writing the word "unchanged," and adding no discussion of Plaintiff's medical records from the nearly four-year period that had elapsed since PA Zizzi signed the report.  (Dkt. 10 at 1274).  The ALJ's statement that there were no amendments or thoughtful changes made by PA Zizzi or LCSW Grable was thus accurate as a matter of fact.  Further, the ALJ asked Dr. Fuess at the hearing whether there was any support for the conclusion that Plaintiff's functioning had remained static over the course of five years, and Dr. Fuess stated that he did not see any such support in the record.  (Dkt. 9 at 1159-60).  The Court finds no error in the ALJ having concluded that PA Zizzi and LCSW Grable did not meaningfully support their wholesale adoption of LCSW Jensen's opinion, particularly given the passage of significant periods of time.

Plaintiff also argues that the ALJ failed to state which mental status examination findings were inconsistent with the opinion.  (Dkt. 14-1 at 42).   However, the ALJ explained that "[o]verall, [Plaintiff's] mental status evaluations were within normal limits, though with some labile, angry, sad, or anxious moods.  However, even when her moods or affect were impaired, she was generally cooperative and well-groomed, as also noted by Dr. Fuess in his hearing testimony."  (Dkt. 9 at 1122).   The ALJ then cited numerous mental status examinations supporting this conclusion.  (*Id.*).   The Court does not find that further elaboration was necessary.

- 11 -

Plaintiff next contends that the ALJ should not have credited Dr. Fuess's testimony, because Dr. Fuess did not "consider[] the cyclic or longitudinal nature of Plaintiff's impairments but rather held periods where she had less abnormal mental status findings against her." (Dkt. 14-1 at 42-43). Plaintiff cites to nothing in Dr. Fuess's testimony to support this assertion, and Dr. Fuess expressly confirmed that he had reviewed the entirety of Plaintiff's medical history and discussed the fact that the record showed "fluctuation" as to Plaintiff's mental functioning. (Dkt. 9 at 1146-47, 1152). Plaintiff's disagreement with Dr. Fuess's conclusions does not mean that he failed to take into account the nature of her impairments.

As to Plaintiff's contention that the ALJ should not have credited the opinions of Drs. Fuess, Ippolito, and Straussner over those of LCSWs Jensen and Grable and PA Zizzi (*see* Dkt. 14-1 at 43), it is well-established that "the opinions of nonexamining sources [can] . . . override treating sources' opinions provided they are supported by evidence in the record," *Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995). The ALJ in this case explained in detail why he found the opinions of Drs. Fuess, Ippolito, and Straussner more consistent with the evidence of record than the opinions of LCSWs Jensen and Grable and PA Zizzi, and it is not this Court's role to reweigh the evidence that led to that conclusion.

Finally, Plaintiff's contention that the ALJ did not fully adopt Dr. Fuess's opinion because Dr. Fuess opined that Plaintiff was unable to appropriately respond to criticism from supervisors in a regular, competitive work setting misreads the record. Dr. Fuess was asked at the hearing whether he agreed with a statement by Dr. Alison Sastry (who issued an opinion in August of 2020, after the date last insured) that Plaintiff would have only a

"fair" ability to respond appropriately to criticism from supervisors.  (Dkt. 9 at 1162-63).

He responded, "[y]eah, I think—I don't have a reason that I can think.  I think I've kind of

gone over it in my opinion about her mood regulation, handling stress, I've discussed that,

and opined about limitations handling stress[.]"  (*Id*. at 1163).  Plaintiff interprets this

response as an adoption of Dr. Sastry's opinion.  (*See* Dkt. 14-1 at 39).  However, the ALJ

clearly did not interpret it in that fashion, nor does the Court believe that he was required

to do so.  It is a reasonable reading of Dr. Fuess's testimony that he agreed with Dr. Sastry

only insofar as he had previously opined that Plaintiff would struggle with critical

supervisors due to stress, but that he nevertheless ultimately concluded that she had only

moderate limitations in interacting with others.

In sum, the Court finds no basis to conclude that the ALJ committed reversible error

in weighing the opinions of record, nor any other basis to reverse the Commissioner's

determination.

## <u>CONCLUSION</u>

For the foregoing reasons, the Commissioner's motion for judgment on the

pleadings (Dkt. 20) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt.

14) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      March 6, 2023
            Rochester, New York